We'll move to the next case of the day, Clark v. Lashbrook, number 17-2212. May it please the Court, Ishan Bhabha on behalf of Appellant Tommy Clark. Mr. Clark was convicted of first-degree murder despite the absence of any physical evidence tying him to the room in which the crime took place. Thus, critical for the State's case was circumstantial evidence, and in particular, evidence number one, that the alibi Mr. Clark provided for the time and place of the murder did not hold up, and number two, that Mr. Clark agreed with another individual, Amos Chares, to rob the two victims of the eventual murder. On these two critical points during their rebuttal argument, the State prosecutor made statements that violate clearly established federal law, and for that reason, Mr. Clark's petition for habeas relief should have been granted. First, after engaging in essentially a colloquy with Mr. Clark regarding his interview with ASA Kelly, the State prosecutor said, You want to talk about facts? I haven't heard any facts from this table over here. Now, in their brief, the State barely responds to any of our arguments on the merits, but I read the District Court decision to find that that statement by the State prosecutor didn't violate Griffin and wasn't a comment on Mr. Clark's silence for two reasons, and we respectfully submit that neither of those reasons is correct. First, the District Court read that that statement could have been a reference not to Mr. Clark's silence, but rather to the State, to the defense counsel's statements, but that is simply incorrect. This Court's decision in Butler is a good example of what a statement by a prosecutor referencing a defense counsel is, namely, calling the defense counsel out by name. And beyond that, if you look at the context of this statement, it's referring to defense counsel. The context of this statement was an interview that took place between ASA Kelly and Mr. Clark, and briefly, in one of the first interviews, a Detective Sikorsky was apparently in the room, but I don't think anyone is contesting that that detective might have been a witness in favor of Mr. Clark. When you agree that if it's a comment on the defendant's choice not to testify, that it is very indirect, and just – and I'm – all I'm basing that upon is just reading, you know, what's troubling you, and that is, I didn't hear one fact from this table over here regarding a statement. And it's amenable to at least a couple of different constructions, is it not? With respect, Your Honor, I don't think that's the case. I think a number of this Court's decisions demonstrate what an indirect comment on a defendant's silence is. It's a statement like, this is undisputed, this is uncontradicted, statements like that from the prosecution here. But here, this statement specifically looks at an interview where two individuals existed, ASA Kelly, who had testified, and the defendant. The only way facts could be introduced about that interview was from the defendant, and I would say one of the things the District Court apparently found probative was this notion that perhaps this was a comment on the fact that Mr. Clark's defense attorney hadn't cross-examined ASA Kelly. But I don't think the statement can sustain that, because, of course, a cross-examination of an adverse witness doesn't introduce new facts into the case. The only person – Sure it does. Why not? Well, Your Honor, because I don't think introducing facts into a case comes from a defense counsel. Introducing facts comes from a witness. The only witness – No. Okay. Well, the only witness that could have provided those facts was Mr. Clark. ASA Kelly had already testified, and that's why I simply don't think it's correct to say that pointing to this table where two individuals were sitting, it could possibly have been defense counsel. And as I said, I think this Court's decision in Butler demonstrates the specificity with which a prosecutor needs to invoke defense counsel in order for the comments to be permissible in that respect. The second thing the District Court cites, too, is Robinson. And we certainly agree that there can be situations in which a defense counsel can open the door for comments on the defendant's silence. But the facts of Robinson are vastly different than the facts here. In Robinson, five times the defense counsel suggested to the jury that if only his client had been able to present his side of the story, he would have been able to defend himself and defend his innocence. Of course, nothing like that happened here whatsoever. So I don't think Robinson provides any immunity for what the State prosecutor said in this case. So what – what to do about Yancey? Your Honor, I think the clearest – Justice, we're on – we're in habeas, right? And you – and I – I really appreciate your – your candor. Footnote 5 on page 41. How do we deal with that? I think, Your Honor, it can be distinguished very simply. This is a direct reference to Mr. Clark's silence. It doesn't fall within the scope of the indirect references like a statement, this is undisputed, there is no contrary evidence. This asks the jury to infer there are no facts that are contradicting this when the only person who could have provided those facts is Mr. Clark. I think that falls well within the scope of Griffin. And we agree, this Court in Yancey, though we respectfully believe it was wrongly decided, held that Griffin only covers direct statements. We think this is as direct a statement as you could get without, candidly, calling Mr. Clark out by name. But I don't think Griffin has ever been read to simply require that. It's not as direct as Griffin, right? You'd rather have the Griffin facts in your hand than these. Griffin, for sure, was a more egregious situation, and the jury instruction was incorrect in Griffin. I agree with that. So yes, Griffin was more direct. But I don't think to get ed per relief, you have to have identical facts, or as egregious as in the Supreme Court decision. And we think this does fall within the prohibition of Griffin. And it's not amenable to an understanding that this was, in fact, a reference to Mr. Clark's attorney, particularly given the context of these statements. The second area in which the state prosecutor violated clearly established federal law was this comment about how the reality of the gangster disciples operate. I think the context here, again, is critical. There was no physical evidence tying Mr. Clark to the room in which the murder took place. And in fact, albeit in a different trial, one of the individuals, Booker, was, in fact, acquitted. Now, I'm not asking this court to read anything more into that other than what the district court itself found in Factor 5 of Darden, which is the evidence here was not overwhelming. And so what the state prosecutor needed to do was tie together a series of circumstantial facts to present for the jury a narrative that Mr. Clark had agreed with Amos Chas to commit the robbery. He did commit the robbery. And then the robbery went awry, and the two victims were murdered. And so critical to this so-called accomplice theory was the notion that Mr. Clark had agreed. And in fact, in both conversations that Ms. Jones testified about, one a couple weeks before the crime and one the day of the crime, when Chas lays out this plan for the jury, that despite the absence of any verbal affirmation, and we're not claiming that verbal affirmation is strictly required, but in the absence of that, he needs to persuade the jury that there was enough in the actions. And so he says it takes a nod, it takes a wink, it gets getting to the front of a car, that's enough. Sometimes silence means yes. Pardon me, Your Honor? Sometimes silence means yes. Sometimes silence means yes. Sometimes it means no. And sometimes it doesn't mean anything at all. And the prosecutor in this case obviously felt that silence alone wasn't enough to make his case, so he had to go to the next stage, which was to say look at the physical actions Mr. Clark took. And I think what's prejudicial here, what's critically prejudicial, is that the prosecutor, with the imprimatur of the state, a gang prosecutor telling the jury this is the reality of how the gangster disciples operate, the jury can then think, well, there's evidence. The prosecutor's told us this. When gangster disciples do these things, it signals affirmation. The judge tells them that whatever either lawyer says is not evidence. That's correct, Your Honor. And certainly if there had been an incorrect instruction, it would have been worse. But I don't think that that immunizes what the state prosecutor said here. And as Justice Reed in dissent in the Illinois Appellate Court found, the prejudice here is because the state prosecutor, in essence, put himself in the position of an expert. And there are lots of cases highlighting the danger that when prosecutors make statements about gangs, juries naturally assume that those are facts and evidence. So why wasn't this, in essence, fair comment on what Jones had described about getting out of the car and Mr. Clark getting in front to go forward with the plan that had been discussed? Your Honor, there's no question that Jones testified as to those facts. And it's also undisputed that both Clark and Chaz were members of the gangster disciples. But I think with respect, it's circular to say that if you want to prove that the gangster disciples signal affirmation by, for example, getting in the front seat of a car, the mere fact that these individuals did that shows that. What the state needs to do logically is say, Mr. Clark got into the front seat of a car because he's a member of the gangster disciples. That signals affirmation. And therefore, you can say he agreed to the robbery, which led to the murder. But it's that exact logical part that's missing. There is no evidence that getting into the front seat of a car is the normal way a gangster disciple shows affirmation. So not more generally, but simply in this context, where Jones is riding in the front seat, they're talking about this robbery, she gets out, and Clark gets in, and off they go to the robbery and ultimate murder. Well, Your Honor, we're not making a sufficiency of the evidence argument. But I think when it comes to, can you take from those facts a conclusion that gangster disciples normally operate this way, or this is how they signal affirmation, which is precisely what the prosecutor said, I don't think you can. It would be a different case if the prosecutor said to the jury, look, you are members of the public. How do you normally act? Getting into the front seat of a car, that could well signal affirmation. But he didn't choose to say that. And I think it's because he recognized that wouldn't have been enough. I see my time has expired. You'll have a moment for rebuttal, Mr. Brahma. Ms. Stotts. May I please the court, counsel? Rita Stotts from the Attorney General's Office for the Respondent. Both of the things petitioners just argued are wrong. I think petitioner said that he presented an alibi and that the prosecutor needed to show that that didn't hold up. There was no alibi evidence at trial. Petitioner didn't call any witnesses at all. So there was no alibi true. But there was a mention of an alibi in ASA Kelly's testimony about the changing statements that petitioner gave. And in that testimony, he did say, oh, you know, we talked to your girlfriend, Shawna. She's not supporting your story. But that wasn't substantive alibi testimony. There was a specific instruction that that wasn't admitted for truth. It was just admitted for its effect on petitioner. And this gets into the Griffin claim. This is the comment about, I didn't hear any facts from this table over here. The easiest way to resolve that is exactly the way the state court did. The state court specifically found, as a matter of fact, that that was not a reference to failure to testify. It found that it was a reference to the fact that defense counsel didn't cross-examine ASA Kelly about the content of petitioner's statements. That finding is controlling under 2254E1 unless it's rebutted with clear and convincing evidence. And petitioner hasn't even tried to do that here. And he couldn't do it because that finding is well-supported by the record. First, the comment was made in the context of a discussion about ASA Kelly's testimony about the statements. And after the prosecutor was interrupted, he took up the argument again and he continued on the same thing. He said, Kelly's testimony was damaging evidence. And he said, I didn't recall a lot of hollering and shouting back when Kelly was cross-examined. It's clearly a reference to defense counsel not cross-examining on the content. And that was a good point to make. Kelly testified for about 12 pages. Cross-examination was one page, a couple of minor points, but nothing contradicting the content of the statements. Along those lines, it's definitely- It's an odd way to rebut that, though. To refer to, I didn't hear one fact from this table over here. It's where the defendant's at in his own criminal trial. I mean, there's some import of the statement that seems to me to be either a comment on the defendant not testifying or the defendant not coming forward with evidence. I mean, that just seems to be the plain import of it. I think you have to- And why would you be referring to a defense table in a trial? I think it's a fair comment to reference to the defense not contradicting the content of the statements. And you do have to give some deference to the trial judge who was there and heard all the arguments together and heard the explanation from the State's attorney and specifically credited it and said, you know, I agree, that's not what you were trying to do. If I had thought otherwise, I would have sustained the objection. And it's also, you know, this idea that only Petitioner could have shed light on this is definitely not true. Counsel could have established facts on cross. Detective Sudarsky was there for at least part of it. He could have called him if he thought Kelly's account was wrong, if there was any dispute about whether Kelly actually talked to Shauna, the girlfriend. He could have called Shauna. So it definitely wasn't a case where, you know, it's obviously a reference to the Petitioner. Counsel was making a point about, you know, these statements were damaging evidence. There is some confusion about the fact that he says facts, you want to talk about facts. I think that's not really a reference to anything in particular. He gets interrupted and he jumps back in and he just kind of calls out facts because that's something that defense counsel had mentioned in his argument. But it's really just, it's not a comment on anything in particular. It's just that these statements were an important part of the State's case. Just to remind the Court, you know, Petitioner told Kelly initially, I was never at, I've never been to John's Club and I was with my girlfriend on the day of the murders. Then when he finds out he's standing in a lineup, he changes his story pretty quick. He needs to set up an argument that the lineup witnesses are going to be wrong about the date. So he says, wait, Kelly, I'm paraphrasing a little bit here. He says, oh, wait, you know, State's Attorney Kelly, actually, I want to talk to you. I remember now I have been to John's Club. I've been there a few times, but I was there the day before the murder, not the day of the murder. So he set up his argument that whoever is going to see the lineup is wrong about the date. He does another important thing in the statement, and this is where he attempts to exculpate himself and his gang boss, Amos Chairs, and shift the blame completely onto the gang underling, Trey Booker. He says, oh, you know what else, State's Attorney Kelly? Actually, Amos Chairs and I were driving around by John's Club on the night of the murders, and we saw Trey Booker standing on the corner, and he was wearing some jewelry. And I asked him about the jewelry, and he, and I asked him where he got it, and he just smiled and he said, it's mine. So these statements are significant. They're false exculpatories that show consciousness of guilt. And then the one about Trey Booker shows that the Petitioner has a knowledge of the crime. He knows Trey Booker is the one who ended up with Kevin Martin's jewelry, and he knows that because he was there. So this is why the statements are significant. And it made sense for counsel to point out that they weren't contradicted or cross-examined in any way. And then there's the point that, you know, the prosecutor explained in a sidebar, Your Honor, I wasn't commenting on failure to testify. I was commenting on counsel not cross-examining Kelly. And then the judge credits that and says, I agree. I thought the same thing. If I had thought otherwise, I certainly would have sustained the objection. So that understanding of the comment, what the state trial court found, certainly reasonable. And so for that reason, it wasn't a comment on failure to testify. So Griffin doesn't even apply. I believe Petitioner also argued that it was very important and that the state had to show accountability here. That's not necessarily true either, because Petitioner was actually a principal. And this gets into the Darden comment, the Darden claim. This is the comment about how the gangster disciples operate. That's easily resolved on prejudice. Even if you assume that comment was somehow improper, it couldn't possibly have affected the verdict. Because the only way it's improper is if you read it in this strained interpretation that Petitioner's arguing, that it wasn't a comment about these gangster disciples, that it was some kind of global comment about how all gangster disciples everywhere operate. So true, if that's what it meant. You know, that wasn't supported by the evidence. There was no evidence about worldwide behavior of gangster disciples. But if it was interpreted that way, we know the jury would have ignored it. They were instructed over and over. Arguments aren't evidence. If you hear an argument that's not supported by the evidence, disregard it. And we assume the juries follow their instructions. So there's no prejudice for that reason. The other reason there's no prejudice is that the comment went to an issue that just wasn't significant. The prosecutor made this comment about how the gangster disciples operate in response to defense counsel's argument. And I'm paraphrasing here, but essentially defense counsel said, you know, we heard a lot of evidence about Amos chairs laying out these plans, but we didn't hear anything about petitioners saying, yes, I would like to participate in that robbery. So he's making the point, you know, there's no verbal agreement while he's in the car with Stacey Jones and Amos chairs. The state didn't need to show that he agreed when he was in the car. I mean, if he didn't agree in the car, he certainly agreed when he was at the bar with the co-defendants, and they all went into the room where the victims are bound and gagged and beaten and robbed and eventually strangled to death. Um, so if there wasn't an agreement, then there was an agreement later. But anyway, the state didn't need accountability. They argued it for sure. But petitioner is a principle in the robbery. The testimony of Tanya Robinson puts him in the bedroom where the crimes are committed. She talks about all the voices she hears. And by process of elimination, we know it's petitioner who's saying they know where it's at. They know where it's at, where they're trying to get the victims to give up the location of the marijuana. So he's actively participating in the robbery at that point. He's a principle. He's on the hook for felony murder because the victims are killed in the course of the robbery. So he would have been convicted under that theory, even if there wasn't this accountability theory. So for both of those reasons, even if the how the gangster disciples operate comment was somehow improper, it couldn't possibly have been prejudicial. Unless the court has further questions, I'd ask the court to affirm the judgment. Thank you, Ms. Knott. Mr. Bava, your time has expired, but one extra minute for rebuttal. Thank you, Your Honor. Just two brief points. Firstly, the argument the state now says is the critical reason to deny the Griffin claim of finding a fact. That argument was, of course, never made in that brief. So that alone is reason to disregard it. But the state court's determination in the discussion with the prosecutor about what the prosecutor might have meant is in no way a fact that should get preclusive significance here. In addition, my friend spent a good deal of time talking about how significant the statements were that Mr. Clark made to ASA Kelly. That's precisely the prejudice. This was a very important issue in the trial, as her own argument demonstrates. Secondly, my friend agrees that there was no evidence of how gangster disciples operate worldwide. But if you look at the statements that the prosecutor made, he said, that's the reality of how gangster disciples operate. That is exactly what he was telling the jury to infer from that conduct. And that is precisely that which there was no evidence in the record. These were two critical points. It was the last thing the prosecutor said before the jury went to deliberate. He thought it was a critical point. And for that reason, we think that the habeas relief should be granted. Thank you. Thank you. Thanks to both counsel. And Mr. Bada, thanks to you and to your firm for the assistance you provide at court and to your client in handling this case. We'll move on to the last case of the day, Zander v. Orlik.